**Mrs. Rubin GOLDSTEIN, Individually and d/b/a Honest Joe's, Appellant,**

v.

**KDFW, TEXAS PAWNBROKERS' ASSOCIATION and Murray Chud, Appellees.**

**No. 5590.**

Court of Civil Appeals of Texas, Waco.

Sept. 9, 1976.

Rehearing Denied Oct. 21, 1976.

Levin, Weinberg & Levin, Dallas, for appellant.

Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Bedsole & Bird, Dallas, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff Mrs. Rubin Goldstein from summary judgment she take nothing in a libel action against defendants KDFW–TV, Texas Pawnbrokers' Association, and Murray Chud.

Plaintiff Mrs. Rubin Goldstein sued defendants KDFW–TV,[1] Texas Pawnbrokers' Association, and Murray Chud for asserted libelous statements made against her by the KDFW–TV broadcaster and by Murray Chud individually and as spokesman for Texas Pawnbrokers' Association in a KDFW–TV news broadcast on October 21, 1973 at 6 P.M. and 10 P.M.

Plaintiff alleged she and her deceased husband Rubin Goldstein operated a business in Dallas known as Joe's Gun & Lock Shop since 1939; that plaintiff and her husband before her became known as "Honest Joe"; that the business consisted of retail and wholesale sales, equipment rental, gun and lock sales and repairs, purchase and sale of new and used items, and prior to 1972 as a pawnshop, at which time such pawnshop portion of the business was discontinued and other business activities continued; that on September 2, 1972 Rubin Goldstein died and the operation, ownership and control of the business has continued since such time in plaintiff, also known as "Honest Joe"; and plaintiff still continues operation of the business.

Plaintiff alleged on October 21, 1973 defendant KDFW broadcast, televised and published in its 6 P.M. and 10 P.M. broadcasts an interview with Murray Chud, spokesman for the Texas Pawnbrokers Association, false and defamatory matter as to plaintiff, announcing among other things plaintiff had some business relation to John Dillinger; that she acquired a "bad reputation", "conducted a seedy business with unsuspecting victims"; "created a bad image for area pawnbrokers"; "failed to obey the laws, and was a renegade".

Plaintiff alleged such remarks were libelous, made with malice, and sought actual and exemplary damages.

Defendants moved for summary judgment plaintiff take nothing, asserting among other matters the broadcast was not libelous of plaintiff and that she has failed to prove a libel action as a matter of law.

The record consists of the pleadings, transcript of the asserted libelous broadcast, motions for summary judgment, photos of plaintiff's place of business, and depositions of plaintiff, Arnold Thomas, defendant Chud, and Tony Garcia.

The trial court granted defendants' motions, and rendered judgment plaintiff take nothing.

Plaintiff appeals on 15 points contending among other matters the trial court erred in granting summary judgment plaintiff take nothing, because a genuine material issue of fact exists as to whether plaintiff was personally identified in the statements of Chud and Station KDFW, and whether such statements were libelous toward plaintiff.

Defendants by counterpoints assert the summary judgment correct because the broadcast as a matter of law was not a libel of plaintiff.

---

1. Times Herald Printing Company d/b/a KDFW–TV.

The text of the 2 broadcasts, with KDFW's remarks in capitals and Chud's remarks in regular type, follow:

The 6 P.M. broadcast:

"THE TEXAS PAWNBROKERS' ASSOCIATION SAYS IT'S ATTEMPTING TO IMPROVE THE CLANDESTINE, SHADY IMAGE THAT THE PUBLIC PRESENTLY ASSOCIATE WITH THE PAWN BUSINESS."

"THE NOW DEFUNCT, INFAMOUS, 'HONEST JOE'S' PAWN SHOP LOCATED IN EAST DALLAS, ACQUIRED A REPUTATION FOR CONDUCTING SEEDY BUSINESS WITH UNSUSPECTING VICTIMS. IT OPERATED DURING THE DAYS OF GANGSTER JOHN DILLINGER AND FINALLY CLOSED DOWN LAST YEAR. THE PRESIDENT OF THE TEXAS PAWNBROKERS' ASSOCIATION CONTENDS THAT 'HONEST JOE'S' CREATED A BAD IMPRESSION."

"It certainly did and I'm happy to say he was never a member of our association and unfortunately he has died and we hope that no one else will take his place because every other store in Dallas, especially those that are members of the association, run a very clean legitimate operation. We hope that interviews like this improve our image somewhat . . we are regulated by the state . . we welcome the legislation that went through so pawnbrokers would have to obey laws and this way we don't have the renegades that we used to have."

"OVER 100 PAWNBROKERS ARE CONVENING TODAY AND TOMORROW IN NORTH PARK INN, IN HOPES OF COMING UP WITH IDEAS TO IMPROVE THEIR PUBLIC IMAGE."

The 10 P.M. broadcast:

"THE CLANDESTINE SHADY IMAGE ASSOCIATED WITH THE PAWNBROKERS' BUSINESS DURING THE PAST DECADES IS IN PROCESS OF BEING IMPROVED."

"THE ONCE THRIVING 'HONEST JOE'S' PAWN SHOP IS CLOSED NOW. BUT WHEN IT WAS IN OPERATION, DURING THE HEY DAY OF GANGSTER JOHN DILLINGER, HONEST JOE'S ACQUIRED A BAD REPUTATION FOR CONDUCTING SEEDY BUSINESS WITH UNSUSPECTING VICTIMS. ONE BROKER SAYS 'HONEST JOE'S' CREATED A BAD IMAGE FOR AREA PAWNBROKERS."

(Chud's remarks were identical as in the 6 P.M. telecast).

"OVER 100 MEMBERS OF THE TEXAS PAWNBROKERS' ASSOCIATION ARE CONVENING IN DALLAS NORTH PARK INN DISCUSSING WAYS OF IMPROVING THE PAWNBROKERS IMAGE WITH THE PUBLIC."

Plaintiff by deposition testified that her husband was known as "Honest Joe" during his lifetime; that upon his death, September 2, 1972, she became known as "Honest Joe"; that her husband and she during her husband's lifetime operated a Pawnshop, gun shop, retail and wholesale business of new and used items until 1972; that commencing in 1972 the pawnshop was discontinued, and after her husband's death she continued the sale of new and used items, operated a swap shop, but did not operate a pawnshop. And the record reflects that after December 31, 1971, neither plaintiff's husband (nor plaintiff) had a license to operate a pawnshop.

Article 5430 VATS defines: "A libel is a defamation expressed in printing or writing * * * tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury."

*Newspapers Inc. v. Matthews,* S.Ct., 339 S.W.2d 890 holds the asserted libel must refer to some ascertained or ascertainable person and that person must be the plaintiff; that it is not necessary that the individual referred to be named, if those who knew or were acquainted with the plaintiff

understand from reading the publication that it referred to the plaintiff. See also: *Miller v. Reinert,* Waco, Tex.Civ.App., er. dis., 534 S.W.2d 161.

We examine the assertedly libelous broadcasts: The subject thereof is "Honest Joe's Pawn Shop" which is mentioned in the past tense and is said in the broadcast to be out of business. The broadcast stated "Honest Joe's Pawn Shop" was "infamous"; "acquired a reputation for conducting seedy business with unsuspecting victims"; operated during the days of John Dillinger; created a bad impression; that "Honest Joe" has died and it is the hope of the Pawnbroker's Association "that no one will take his place"; that he was "one of the renegades we used to have."

Plaintiff's name is Bess Goldstein; her name was not mentioned in the broadcast; she is not a pawnbroker, and has never been a pawnbroker; the business has not had a pawnbroker license since December 31, 1971; and it was not until September 1972 that she became known as "Honest Joe", a year after her husband had discontinued his pawnbroker's business; and she has never done business as "Honest Joe's Pawn Shop."

We think the references in the broadcast to "Honest Joe" identify plaintiff's deceased husband, and that they exclude plaintiff.

The matters complained of are thus not libelous to plaintiff as a matter of law.

All plaintiff's points and contentions are overruled.

AFFIRMED.